IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MANUEL ZISUMBO, ) ) ) Plaintiff, ) ) v. ) ) TRANS UNION, LLC ) ) and ) ) SAGESTREAM, LLC, ) ) Defendants. ) | Civil Action No. COMPLAINT JURY TRIAL DEMANDED NON-ARBITRATION |

## COMPLAINT

### PRELIMINARY STATEMENT

1. Defendants, Trans Union, LLC ("Trans Union") and SageStream, LLC ("SageStream"), national consumer reporting agencies ("CRAs"), have been selling credit reports inaccurately marking Plaintiff as deceased. When they inaccurately report a living consumer as deceased Defendants makes it practically impossible for that consumer to access credit, as they did with Plaintiff. Defendants' practices also harm the businesses that purchase their reports; as such companies cannot process credit applications due to the applicant's lack of a credit score. There is no good faith rationale to explain Defendants' practices other than the generation of revenue. If Defendants actually believed that Plaintiff was deceased, they had no legally permissible basis to sell the reports. If Defendants believed Plaintiff was alive, they knowingly sold the reports with a gross inaccuracy. Moreover, Defendants know that identity thieves use the credit information of truly deceased persons to commit credit fraud. Defendants thus violated Plaintiff's rights under the Fair Credit Reporting Act ("FCRA"), as set forth below.

1

## JURISDICTION & VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

4. Plaintiff Manuel Zisumbo, is an adult individual residing in the Arvada, Colorado.

5. Defendant Trans Union is a business entity that regularly conducts business in the Eastern District of Pennsylvania, and which has a principal place of business at 1510 Chester Pike, Crum Lynne, PA 19022.

6. Defendant SageStream is a business entity that regularly conducts business in the Eastern District of Pennsylvania, and which has a principal place of business at 15253 Avenue of Science, San Diego, CA 92128.

## FACTUAL ALLEGATIONS

### *Defendant's Practices Concerning the Sale of Reports on the "Deceased"*

7. Defendants are regulated as "consumer reporting agencies" ("CRA") under the FCRA 15 U.S.C. § 1681a(e).

8. Defendants sell millions of consumer reports (often called "credit reports" or "reports") per day, and Defendants also sell credit scores.  15 U.S.C. § 1681a(e).

9. Pursuant to the FCRA, Defendants must follow procedures which assure that the reports they sell meet the standard of "maximum possible accuracy."   15 U.S.C. § 1681e(b).

10. Pursuant to the FCRA, Defendants must maintain reasonable procedures to assure that reports are sold only for legitimate "permissible purposes."  15 U.S.C. §§ 1681e(a) & 1681b.

11. Defendants place a "deceased" notation or marking on reports when it is advised from any of its many data furnishing sources that a given consumer is deceased.

2

12. The furnishing sources identify "deceased" consumers by marking the "status" of such consumer's responsibility for any subject account with an "X" code in the ECOA field of an electronic data input format used in the credit reporting industry, known as Metro or Metro 2.

13. Defendants do not request or require a death certificate from any of its data sources which advise that a consumer is "deceased" before placing a "deceased" mark on that consumer's report.

14. Defendants do not request or require any proof from any data source which advises that a consumer is "deceased" showing that the consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

15. Defendants do not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

16. A deceased notation is a very unusual marking upon a credit file or credit report.

17. Defendants employ no procedures *at all* which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report and selling that report.

18. Even in instances where other data on the face of the consumer's report indicates that he/she is not deceased, Defendants employ no procedures which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

19. Even in instances where the purportedly deceased consumer communicates directly with Defendants, Defendants employ no procedures which assures that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

20. Once a "deceased" mark is placed upon a consumer's report, Defendants will not calculate and will not provide a credit score for that consumer.

21. Nevertheless, Defendants routinely sell to third parties credit reports for persons with a "deceased" mark on their reports with no credit score, despite a request by the purchaser of the report for a credit score for that consumer.

22. Upon Defendants' reports with a "deceased" mark sold to third parties Defendants never calculate or provide a credit score for that consumer.

23. Defendants know that third party credit issuers use a credit score in order to process a given credit application.

24. Defendants know that many third-party credit issuers require a credit score in order to process a given credit application.

25. Defendants know that consumers without credit scores are unable to secure any credit from most credit issuers.

26. Defendants know that living consumers are turned down for credit specifically because Defendants are reporting them as "deceased" and without a credit score.

27. Defendants charge third parties a fee for reports with a mark that a consumer is deceased ("reports on the deceased") as it would for any other report.

28. Defendants profit from the sale of reports on the deceased.

29. Defendants know that truly deceased consumers do not apply for credit.

30. Defendants have no death certificate, executorship paper, or any other proof requirements for its data sources which report a consumer as deceased or for the buyers of its reports which access the purportedly deceased consumer's information.

31. Indeed, Defendants sells reports on the deceased to third parties in an automated fashion and without any specific or general certification that could reasonably explain a

"permissible purpose" for purchasing or using a (supposedly) deceased consumer's credit history and/or report.

32.     For consumers who are deceased, there exists no permissible purpose under the FCRA for Defendants to ever sell their credit reports, absent a court order.

33.     Defendants know that such reports contain a vast amount of personal identifying and credit account information on the supposedly deceased consumer, information that can be used to commit identity theft or for other fraudulent purposes.

### *Case Specific Facts*

34.     Plaintiff has been marked by Defendants as "deceased" on his Trans Union and SageStream credit reports since at least December 2020.

35.     Plaintiff is not deceased.

36.     Defendants did not calculate or provide any credit score for or on Plaintiff, even though they sold reports about him to third parties marking him as "deceased" on multiple occasions since December 2020.

37.     Prior to sale of their consumer reports about Plaintiff, Defendants did nothing to investigate the information received regarding the deceased notation.

38.     Defendants continue to publish and disseminate such inaccurate information to other third parties, persons, entities, and credit grantors.  Defendants have repeatedly published and disseminated consumer reports to such third parties from at least December 2020 through the present.

39.     As a result, Defendants made it practically impossible for Plaintiff to obtain credit.

40.     As a result of Defendants inaccurately marking Plaintiff as deceased, he was denied the use of his credit.

41. As a result of Defendants' conduct, Plaintiff has suffered actual damages in the form of credit denial or loss of credit opportunity, credit defamation and emotional distress, including anxiety, frustration, embarrassment, and humiliation.

42. At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

43. At all times pertinent hereto, the conduct of Defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of the Plaintiff herein.

## COUNT ONE – VIOLATIONS OF THE FCRA
## 15 U.S.C. § 1681e(b)

44. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

45. At all times pertinent hereto, Defendants were "person[s]" and "consumer reporting agenc[ies]" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

46. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

47. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

48. Pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o, Defendants are liable to the Plaintiff for willfully and negligently failing to comply with the requirements imposed on a consumer reporting agency in violation of 15 U.S.C. § 1681e(b).

49. The conduct of Defendants were a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff

that are outlined more fully above and, as a result, Defendants are liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## JURY TRIAL DEMAND

50. Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendant, based on the following requested relief:

(a) Actual damages;

(b) Statutory damages;

(c) Punitive damages;

(d) Costs and reasonable attorney's fees pursuant to 15 U.S.C.§§1681n and 1681o; and

(e) Such other and further relief as may be necessary, just and proper.

Respectfully Submitted,

**FRANCIS MAILMAN SOUMILAS, P.C.**

BY: */s/ Mark D. Mailman*
MARK D. MAILMAN, ESQUIRE
JOSEPH L. GENTILCORE, ESQUIRE
1600 Market Street, Suite 2510
Philadelphia, PA 19103
(215) 735-8600

Dated: July 2, 2021

***Attorneys for Plaintiff***